FILED
JEANNE A. NAUGHTON, CLERK

AUG 28 2017

U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY _____ DEPUTY

**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY**

Case No.: 16-11410 (RG)

In Re:

ANDREW TZANIDES,

        Debtor.

DAVID WOLFF,  Chapter 7 Trustee,

        Plaintiff,

    v.

HELEN TZANIDES,

        Defendant.

Adv. No. 16-1261(RG)

OPINION

**APPEARANCES:**

Trenk, DiPasquale, Della Fera, & Sodono, P.C.
BY:    Andrea Dobin, Esq.
427 Riverview Plaza
Trenton, New Jersey 08611
*Special Counsel to Plaintiff, David Wolff, Chapter 7 Trustee*

Law Offices of David Wolff, LLC
BY:    David Wolff, Esq., Trustee
396 Route 34
Matawan, New Jersey 07747
*Chapter 7 Trustee*

LoFaro & Reiser, LLP
BY:    Glenn R. Reiser, Esq.
20 Court Street
Hackensack, New Jersey 07601
*Attorney(s) for Defendant, Helen Tzanides*

Rabinowitz, Lubetkin & Tully, L.L.C.
BY:    Jay L. Lubetkin, Esq.
293 Eisenhower Parkway, Suite 100
Livingston, New Jersey 07039
*Counsel for Debtor, Andrew Tzanides*

## ROSEMARY GAMBARDELLA, BANKRUPTCY JUDGE

### MATTER BEFORE THE COURT

Before the Court is a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and Fed R.

Bankr. P. 7012, or in the alternative, for Summary Judgment pursuant to Fed. R. Civ. P. 56 and

Fed. R. Bankr. 7056, filed by the Defendant seeking entry of an order dismissing the Chapter 7

Trustee's Adversary Complaint and compelling Plaintiff to discharge a *Notice of Lis Pendens*

recorded with the Bergen County Clerk on April 19, 2016. *David Wolff, Chapter 7 Trustee v.*

*Helen Tzanides*, Adv. Pro. No. 16-1261(RG).  The Complaint asserts a claim for avoidance of an

alleged fraudulent transfer of the estate's interest in real property known as 47 Eisenhower

Drive, Cresskill, New Jersey pursuant to Sections 544(b) and 550 of the United States

Bankruptcy Code and New Jersey's Uniform Fraudulent Transfer Act, N.J.S.A. 25:2–25(a), and

a claim for the imposition of a constructive trust pursuant to Section 105 of the Bankruptcy Code

and authority to sell co-owner's interest pursuant to 11 U.S.C. § 363(h). The Trustee filed

Opposition to the motion and Defendant filed a Reply. This Court held a Hearing on October 11,

2016 and reserved decision. The following constitutes this Court's findings of fact and

conclusions of law.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(a) and 157(b),

and the Standing Order of Reference from the United States District Court for the District of

New Jersey dated July 23, 1984 and amended September 18, 2012. This matter constitutes a

core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H).

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

*Background Information*

On November 25, 1992, Andrew Tzanides ("Debtor") and his wife, Helen Tzanides

("Defendant"), purchased real property located at 47 Eisenhower Drive, Cresskill, Bergen

County, New Jersey (the "Cresskill Property"). By deed dated November 1, 1993, the Debtor

transferred his ownership interest in the Cresskill Property to the Defendant, his wife, for $100.

A deed was recorded with the Bergen County Clerk on November 15, 1993 ("1993 Deed"). On

June 1, 2002, Defendant filed a corrective deed with the Bergen County Clerk ("2002 Deed").[1]

On November 9, 2005, Defendant sold the Cresskill Property for $1,800,000. According

to the Trustee, Defendant used the proceeds from the sale to purchase a single family residence

located at 517 Witch Terrace, River Vale, New Jersey (the "River Vale Property"), where she

---

[1] In Defendant's Certification, she explained that she filed the 2002 Deed to correct certain errors and omissions in the 1993 Deed. The parties have since agreed that the 1993 Deed is the operative deed for purposes of the instant Complaint.

currently resides with the Debtor.   On April 19, 2016, Trustee caused a *Lis Pendens* to be recorded with the Bergen County Clerk concerning the River Vale Property.

*Debtor's Previous Bankruptcy Case*

Prior to Defendant's sale of the Cresskill Property, on December 12, 1997, the Debtor, Andrew Tzanides, filed a petition under chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. *In re Andrew Tzanides*, Case No. 97-44472-RG ("Previous Case").   On April 21, 1998, the Court entered an Order converting the Chapter 13 case to Chapter 7.   Albert Russo was appointed as the Chapter 7 Trustee ("Mr. Russo" or "Previous Trustee") by the Office of the United States Trustee. *See* Reiser Decl., Ex. 13, at Docket No. 17.

On July 31, 1998, Mr. Russo filed a Complaint (the "Russo Complaint") against the Debtor and the Defendant challenging the 1993 transfer of the Cresskill Property. *Russo v. Tzanides*, Adv. Pro. No. 98-02629-RG; *see* Reiser, Decl., Ex. 5.   The Russo Complaint contained three counts.   Count 1 alleged that the Debtor received less than reasonably equivalent value in exchange for the 1993 transfer of his interest in the Cresskill Property, and was either insolvent at the time or became insolvent as a result of the transfer. *Id.* ¶¶ 9-10.   Count 1 further alleged that the transfer was made with "actual intent to hinder, delay, or defraud creditors" and that the Debtor concealed an asset during the one year period prior to the filing of his petition and sought denial of discharge under 11 U.S.C. § 727(a)(2)(A). *Id.* ¶¶ 11, 13.   Count 2 alleged that if the transfer occurred within the one year prior to the petition date, such transfer date is legally and equitably tolled, and said transfer is fraudulent as to the Trustee and may be avoided by the Trustee pursuant to 11 U.S.C. § 548. *Id.* ¶ 15.   Count 3 alleged that if the transfer occurred within the four years prior to the petition, such transfer date is legally or equitably tolled, and

may be avoided by the Trustee pursuant to N.J.S.A. 25:2–1 *et seq.* as applied by 11 U.S.C. § 544. *Id.* ¶ 17.

On October 19, 1998, Mr. Russo filed an Information for Notice of Settlement of Controversy as to the First Fraudulent Transfer Case, which recited the terms of the proposed settlement as follows:

> Terms of the settlement:
>
> Debtor has established that at the time of the transfer of debtor's interest in marital home (November, 1993), debtor had assets in excess of liabilities, thus rendered debtor solvent for purposes of fraudulent conveyance statute.
>
> Trustee proposes to dismiss adversary without cost and close his administration of this case.

Reiser Decl., Ex. 15.

Two of Debtor's creditors, EVEREN Securities, Inc. represented by the law firm of Wasserman, Jurista & Stolz, P.C., and Stephen A. North and Barbara North, objected to the proposed settlement. Reiser Decl., Exs. 9, 10. Pursuant to an Order of this Court entered on February 1, 1999, the First Fraudulent Transfer Case was settled by and between the parties and "dismissed with prejudice" and the Debtor was granted a discharge of all of his dischargeable debts. ("1999 Settlement Order"). *See* Order Approving Settlement, Reiser Decl., Ex. 11. As part of the settlement, the objecting creditors each withdrew their respective objections. *Id.* In withdrawing the objection, Stephen A. North and Barbara North were represented by the law firm of Ventura, Miesowitz, Albano & Keough. As set forth in the preamble of the 1999 Settlement Order, Mr. Russo determined that there was no basis for the continued prosecution of the First Fraudulent Transfer Case, that the Debtor's transfer of the Cresskill Property in 1993 was not a fraudulent conveyance and was otherwise not avoidable, and that no facts

existed to support an objection to the Debtor's bankruptcy discharge. *Id.* Lastly, by the Order the Debtor agreed to pay Mr. Russo's law firm, Albert Russo, P.C., $2,500 in exchange for the settlement. *Id.*

On March 15, 1999, the Debtor received a Discharge. Reiser Decl., Ex. 19. On February 23, 2000, Mr. Russo filed a Report of No Distribution. Reiser Decl., Ex. 20. On March 22, 2000, the Court issued a Final Decree and closed the Case. Reiser Decl., Ex. 21.

*The Current Bankruptcy Case and Adversarial Proceeding*

On January 28, 2016, more than nineteen years after the first bankruptcy filing, the Debtor filed a petition under Chapter 7 of the Bankruptcy Code ("Current Case"). Chapter 7 Petition, *In re Andrew Tzanides*, Case No. 16-11410, ECF No. 1. On January 29, 2016, the Office of the United States Trustee appointed David Wolff as Chapter 7 Trustee ("Trustee" or "Current Trustee"). ECF No. 4.

On April 12, 2016, the Trustee filed the instant Adversary Proceeding against the Defendant. Complaint, *Wolff v. Helen Tzanides*, Adv. No. 16-1261, ECF No. 1. The Complaint alleges that by deed on or about May 22, 2002, the Debtor transferred his interest in the Cresskill Property to the Defendant "with intent to evade the claims of then-existing and/or future creditors" and received no consideration in exchange for the transfer. Compl. ¶¶ 10, 11, 13. Trustee alleges that "although he was no longer an owner of the Cresskill Property at the time, upon information and belief, in 2003 the Debtor was a co-borrower on a loan from Advanced Financial Services Federal Credit Union, which entity was granted a lien on an interest in the Cresskill Property, although the Debtor had no recorded interest in the Cresskill Property at that time." *Id.* ¶ 16. The Trustee further alleges that on March 3, 2003, the New Jersey Division of Taxation entered judgment ("2003 Tax Judgment") against the Debtor in the amount of

6

$12,528.61. The Defendant had no liability on the 2003 Tax Judgment. *Id.* ¶¶ 14, 15. The Trustee alleges that during the time she was sole owner of the Cresskill Property the Defendant lacked the income sufficient to pay the mortgage on the Cresskill Property, real estate taxes or other related expenses without the Debtor's financial assistance. *Id.* ¶ 17. In November 2005 the Cresskill property was sold for the sum of $1,800,000.00. The Trustee alleges that a portion of the proceeds of the 2005 Cresskill sale were used to satisfy the NJ Tax Judgment. *Id.* ¶ 19. Trustee alleges that on June 12, 2006, Debtor and Defendant borrowed the sum of $250,000 from the Emigrant Mortgage Company, Inc., secured by a mortgage on the River Vale Property. *Id.* ¶ 23. Trustee alleges that Defendant lacked the income sufficient to pay the Emigrant Mortgage, real estate taxes or other expenses associated with her ownership of the River Vale Property. *Id.* ¶ 25. Trustee alleges that on August 23, 2007, the New Jersey Division of Taxation entered judgment ("2007 Tax Judgment") against the Debtor and Defendant in the amount of $17,611.18, which judgment remains unsatisfied. *Id.* ¶ 26. The Trustee asserts that on or about August 25, 2009, a foreclosure action was initiated related to the Emigrant Mortgage Company mortgage which action was dismissed without prejudice in October 2009. The Emigrant Mortgage Company mortgage was satisfied and canceled in November 2013. According to the Trustee, the Defendant currently owns the River Vale Property which has no liens on it except the 2007 Tax Judgment.

In Count 1 of the Complaint, the Trustee asserts that the Defendant transferred his interest in the Cresskill Property to Defendant with actual intent to defraud creditors, and seeks to avoid the transfer pursuant to Section 544 of the Bankruptcy Code and N.J.S.A 25:2–25(a). Because the Trustee initiated this action within one year of his appointment, the Trustee asserts that the action is timely under N.J.S.A. 25:2–31(a). The Trustee further alleges that "the fact that

Debtor tended the Transferred Value to his wife, the Defendant, more than four years ago does not prohibit the Trustee from recovery of the Transferred Value from the Defendant." *Id.* ¶ 33. Trustee further alleges that "[a]ny subsequent transfer of the Transferred Value into another asset., *i.e.*, the River Vale Property, does not defeat any claim of the Trustee for Recovery of the Transferred Value," which he contends is "now part of the equity in the River Vale property." *Id.* ¶¶ 34-35. By Count 1, the Trustee seeks to compel the Defendant to return the Transferred Value to the Estate by executing a Deed for the River Vale Property such that the owners will be the Defendant and the Trustee.

In Count 2, the Trustee seeks to impose a "constructive trust" on the one-half ownership of the River Vale Property for the benefit of creditors pursuant to Section 105 of the Bankruptcy Code. Trustee alleges that the Debtor "enjoyed all of the benefits of the River Vale Property, while at the same time shielding same from his creditors", *Id.* ¶ 40, and "utilized the equity of the River Vale Property and its predecessor, the Cresskill Property for his benefit without regard to the fact he was not the titled owner." *Id.* ¶ 41. As a result, Trustee contends that "equity demands that a constructive trust be imposed on a one-half interest in the River Vale Property for the benefit of the Debtor's bankruptcy estate." *Id.* ¶ 42.

Count 3 seeks the authority to sell the bankruptcy estate's one-half in interest the River Vale Property, together with the Defendant's interest in the River Vale Property, for the benefit of the Estate and the Debtor's creditors pursuant to Section 363(h) of the Bankruptcy Code. *Id.* ¶¶ 43-48.

*Defendant's Motion to Dismiss/ Motion for Summary Judgment*

On April 22, 2016, Defendant filed the instant Motion to Dismiss the Trustee's Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P.

7012, or, in the alternative for summary judgment pursuant to Fed. R. Civ. P. 56 and Fed. R.

Bankr. P. 7056 and to compel Discharge of *Lis Pendens*.  Motion to Dismiss, *Wolff v. Helen*

*Tzanides*, Adv. Pro. No. 16-01261, ECF No. 5.

   First, Defendant contends that this matter can be properly decided by a motion to dismiss

based upon the complaint and in the attached exhibits. *Id.* at 9.  Alternatively, Defendant asserts

that even if this Motion were treated as a motion for summary judgment, there are no facts that

could support the relief requested by the Trustee. *Id.* at 11.  In support of the Motion, the

Declarations of Defendant Helen Tzanides and Glenn R. Reiser, Esq. are submitted along with,

among other documents, relevant pleadings and orders from Debtor's Previous Bankruptcy Case.

   Second, Defendant argues that the Trustee's Complaint is time-barred by the applicable

statute of limitations set forth in the New Jersey Uniform Fraudulent Transfer Act, N.J.S.A.

25:2–20, *et seq*. ("NJ UFTA") and N.J.S.A. 25:2–31(a).  The NJ UFTA allows a creditor

pursuing a fraudulent transfer claim under N.J.S.A. 25:2–25(a) to file a complaint within four

years of the transfer or within one year after "the transfer . . . was discovered by the claimant."

(citing N.J.S.A. 25:2–31(a))[2].  Defendant argues that the UFTA's time limitation applies to the

Trustee because pursuant to Section 546(a) of the Bankruptcy Code a trustee can only file a

fraudulent transfer claim predicated under state law upon the later of 2 years from the date of the

bankruptcy filing or within 1 year after his appointment. *Id.* at 13 (citing U.S.C. § 546(a)(1)(A)).

Therefore, Defendant states that "if the statute of limitations to file a fraudulent transfer claim

under New Jersey law has expired by the time the bankruptcy petition is filed, [citing N.J.S.A.

25:2–31(a)], … then a bankruptcy trustee cannot utilize Section 546 to resuscitate an expired

claim even if he files an adversary action within 2 years of the bankruptcy filing or within 1-year

of his appointment." *Id.* at 13-14 (citing *In re Princeton-New York Inv'rs, Inc.*, 219 B.R. 55, 62-

---

[2] The incorrect version of the Statute was originally cited but thereafter corrected.

65 (D.N.J. 1998)). Defendant argues that for cases involving real property, "transfer" has been defined as the date the deed to the real property is recorded. *Id.* at 13 (citing N.J.S.A. 25:2–28(a)(1); *Boardwalk Regency Corp. v. Burd*, 262 N.J. Super. 162, 165 (App. Div. 1993)). Defendant argues that under the facts of this Case, the Trustee's claims are time-barred because both the transfer of the Cresskill Property and the Defendant's use of the proceeds from the 2005 sale of the Cresskill Property to purchase the River Vale Property occurred more than four years prior to the Debtor's current bankruptcy filing and both transactions are traceable to real property deeds recorded with the Bergen County Clerk and were or remain a matter of public record and date back more than four years prior to the Debtor's current bankruptcy filing. *Id.* at 14. Defendant further argues that the one-year tolling provision does not apply because the deeds were properly recorded, and thus were a matter of public record. *Id.* (citing *Boardwalk Regency Corp.*, 262 N.J. Super. at 165). Defendant contends that under these circumstances no unsecured creditor could bring a fraudulent transfer claim and therefore, the Trustee, who stands in the shoes of the unsecured creditors, is likewise precluded from bringing a claim. *Id.* at 12-15. Defendant asserts that under 11 U.S.C. § 544(b) the Trustee succeeds to the rights of an identifiable unsecured creditor in existence at the commencement of the bankruptcy case who may avoid the transfer or obligation under state or federal law. *Id.* at 12 (citing *In re Bernstein*, 259 B.R. 555, 560 (Bankr. D.N.J. 2001); *G-I Holdings, Inc. v. Those Parties Listed On Exhibit A (In re G-I Holdings, Inc.)*, 313 B.R. 612, 632 (Bankr. D.N.J. 2004)). The Defendant asserts here that the four year statute of limitations for the Trustee to assert fraudulent conveyance claims expired before the filing date of the Debtor's current bankruptcy filing and the one year discovery rule is inapplicable so that the present Adversary Proceeding must be dismissed.

Third, Defendant argues that the Settlement Order resolving the 1998 Adversary Proceeding and dismissing that action "with prejudice" bars Trustee's fraudulent transfer claims under the doctrine of *res judicata*. *Id.* at 15. The Defendant argues that all three elements of *res judicata* are met: (1) a final judgment on the merits, (2) the same parties or their privities, and (3) a later suit based upon the same cause of action. *Id.* at 16 (citing *Mullarkey v. Tamboer (In re Mullarkey)*, 536 F.3d 215, 225 (3d Cir. 2008)). Defendant notes that *res judicata* bars claims that were brought in a previous proceeding and claims that could have been brought. *Id.* (citing *Post v. Hartford Inc. Co.*, 501 F.3d 154, 169 (3d Cir. 2007)). With respect to the final judgment element, Defendant asserts that prior federal court judgments, such as the one entered in Debtor's Previous Case, "are controlled by federal res judicata rules." *Id.* at 15 (citing *Burlington N. R.R. Co. v. Hyundai Merch. Marine Co., Ltd.*, 63 F.3d 1227, 1231 (3rd Cir. 1995); *Agilectric Power Partners, Ltd. v. General Elec., Co.*, 20 F.3d 663, 664 (5th Cir. 1995); *Barnett v. Stern*, 909 F.2d 973, 977 (7th Cir. 1990); *Steve D. Thompson Trucking Inc. v. Dorsey Trailers, Inc.*, 870 F.2d 1044, 1045 (5th Cir. 1989)). The Defendant argues that the "settlement approved by this Bankruptcy Court conclusively established that the Debtor had no legal or equitable interest in the Cresskill Property, and hence it was not part of the bankruptcy estate as relating to the 1997 bankruptcy filing." *Id.* at 19 (citing 11 U.S.C. § 541(a)). With respect to the privity element, Defendant contends that the Prior Trustee and the Current Trustee are in privity with one another because a trustee in bankruptcy is a successor to the Debtor's property, and "for many purposes deemed in privity with the bankrupt." *Id.* at 18, 20 (citing *In re Good Time Charley's, Inc.*, 54 B.R. 157, 160 (Bankr. D.N.J. 1984) (quoting *Edelman v. McMullin Orchards (In re Silver Mill Frozen Foods, Inc.*, 32 B.R. 783, 785 (Bankr. W.D. Mich. 1983))). The Defendant further argues that because both the Debtor and the Defendant were named as defendants in the previous

Fraudulent Transfer Action, and Defendant is now named as a defendant in this Action, Mr.

Russo was afforded an opportunity to challenge the validity of Debtor's transfer of his interest in

the Cresskill property to his wife Helen Tzanides as were the Debtor's creditors. *Id.* at 20.

Therefore, Defendant concludes that "[t]he current Trustee is in privity with Mr. Russo as to the

same fraudulent transfer claims, and therefore doesn't get a second bite at the apple 18 years

later." *Id.* at 21. With respect to the third element of *res judicata,* Defendant argues that the

Trustee's Complaint is based upon the same facts that existed in the Previous Fraudulent

Transfer Action. *Id.* at 22. Defendant's position is that:

> [i]f the Debtor's initial 1993 transfer of his ownership interest in the Cresskill
> Property to [Defendant] was determined not to constitute a fraudulent transfer in
> the earlier filed adversary action, then it must follow that the Trustee cannot
> attack the proceeds of [Defendant's] subsequent sale of the Cresskill Property in
> 2005 as a fraudulent transfer or by resorting to a constructive trust theory. Nor
> can the Trustee attempt to piggyback the Debtor's 1993 transfer of the Cresskill
> Property as a means to attack [Defendant's] simultaneous 2005 sale of the
> Cresskill Property and purchase of the River Vale Property.

*Id.* at 21-22.

Defendant therefore urges the Court to dismiss the Complaint pursuant to the

doctrine of *res judicata. Id.* at 22.

Fourth, Defendant argues that Trustee's constructive trust theory is inapplicable. The

Defendant notes that under New Jersey law a constructive trust is a remedial device that can be

imposed upon a showing that property has been obtained by a wrongful act and the recipient will

be unjustly enriched by retaining the property. *Id.* at 22 (citing *Flanigan v. Munson*, 175 N.J.

597, 608 (2003) (citing *D'Ippolito v. Castoro,* 51 N.J. 584, 589 (1968))). The test as to whether

a constructive trust is an appropriate remedy is proof of (1) a wrongful act which (2) resulted in

an unjust enrichment. *Id.* (citing *D'Ippolito,* 51 N.J. at 589). Defendant contends that the Trustee

cannot meet his burden under the prevalent case law, which cautions that a constructive trust

12

may only be applied "when the equities of a given case clearly warrant it." *Id.* (citing *Flanigan*, 175 N.J. at 611). Defendant further notes that the suitability of a constructive trust must be established by "clear, definite, unequivocal and satisfactory evidence." *Id.* (quoting *Gray v. Bradley*, 1 N.J. 102, 104 (1948)). Defendant contends that "the Trustee cannot avail himself of Section 105(a) to avoid application of the limitations periods imposed by Bankruptcy Code Section 544.", *Id.* at 25, and that as the Trustee is time-barred under New Jersey law from pursuing fraudulent conveyance claims against Defendant arising from the initial 1993 transfer of the Debtor's interest in the Cresskill Property, and Defendant's subsequent sale of the Cresskill Property in 2005 and use of those proceeds to purchase the River Vale Property in 2005, the Third Count of the Complaint must be dismissed as a matter of law. *Id.* at 25. Defendant further argues that the Settlement embodied in this Court's February 1, 1999 order dismissing the First Fraudulent Transfer Action eliminates the wrongful act element required to impose a constructive trust. *Id.*

Lastly, Defendant requests that the Court compel the Trustee at his own expense to take all necessary steps to discharge the Notice of *Lis Pendens* recorded with the Bergen County Clerk against the River Vale Property. *Id.* at 25-27 (citing N.J.S.A. 2A:15–14; *Polk v. Schwartz*, 166 N.J. Super. 292, 299-300 (App. Div. 1979)).

*Trustee's Opposition*

On May 27, 2016, the Trustee filed a Memorandum of Law in Opposition to Motion of Defendant Helen Tzanides to Dismiss Adversary Proceeding. Opposition Brief, *Wolff v. Helen Tzanides*, Adv. Pro. No. 16-1261, ECF No. 8. The Trustee argues that Defendant has not met her burden under a motion to dismiss or summary judgment standard. *Id.* at 4. Trustee asserts that "[i]t is not, and cannot, be disputed that the proceeds of sale of the Cresskill Property were the

sole source of funding for acquisition of the River Vale Property." *Id.* at 2-3. The Trustee emphasizes that his claim in this Adversary Proceeding is one for actual fraud pursuant to N.J.S.A. 25:2–25(a), as opposed to an insolvency claim pursuant to subsection (b). The Trustee urges that the Complaint focuses on a 2002 transfer of the Cresskill Property and alleges that the Debtor transferred his interest in the Cresskill Property to Defendant with actual intent to avoid creditors. *Id.* at 11-12. The Trustee argues that to the extent he is able to avoid the transfer of the Cresskill Property as a fraudulent transfer, he is entitled to trace the proceeds of the sale of the Cresskill Property and assert an interest in the River Vale Property pursuant to 11 U.S.C. § 550 or assert a constructive trust on the River Vale Property for the benefit of creditors holding claims in the 2016 bankruptcy case. *Id.* The Trustee therefore argues that "it is wholly irrelevant whether the Debtor may have been solvent at the time of the transfer of the Cresskill Property to [Defendant]." *Id.* at 12.

In regard to the facts here, the Trustee urges that critical to the analysis (and missing from the movant's analysis) is that the debt held by creditors in the 1997 bankruptcy case no longer exist, as a Discharge was entered in that case. *Id.* at 2. The Trustee asserts that when the Debtor commenced the present bankruptcy case in 2016 it was, by its very nature, designed to address an entirely new body of creditors holding a different set of unpaid claims. *Id.* at 2. Further, the Trustee argues that Defendant has not met the *prima facie* burden for a motion to dismiss or for summary judgment. The Trustee sets forth a number of factual allegations, which he asserts constitute "badges of fraud." *Id.* at 12-13 (citing *Bielan, Miklos & Makrogiannis a/k/a BMMD v. Vasquez*, 2010 WL 1644175, *3 (Bankr. D.N.J. April 21, 2010)). Specifically, the Trustee asserts that the following facts satisfy the badges of fraud: Debtor transferred his 50% interest in the Cresskill Property to the Defendant for only $100 when his interest was worth more than $1

14

million; Debtor continued to reside at the Cresskill Property following the transfer; the Debtor had no other significant assets at the time of the transfer; Defendant did not have sufficient income to pay the expenses associated with the Cresskill Property; Debtor's earnings and credit worthiness were used to secure four different mortgages on the Cresskill Property following the transfer; and Defendant sold the Cresskill Property and used the sale proceeds to purchase the River Vale Property, where the Defendant and Debtor continue to reside; in 2006 the Defendant and Debtor granted a mortgage on the River Vale Property to Emigrant Mortgage Company for $250,000 at a time Defendant lacked income to qualify for such mortgage; and the 2006 Emigrant Mortgage Company mortgage was canceled of record in November 2013. *Id.* at 13. The Trustee contends that based upon these facts, he should be allowed to proceed with discovery and to continue this litigation. *Id.* at 14.

Second, Trustee argues that his Complaint is not time barred by the applicable statute of limitations because the one-year tolling provision set forth in N.J.S.A. 25:2–31(a) applies to his actual fraud claim. *Id.* at 5. The Trustee notes that the statute was amended in 2002 at N.J.S.A. 25:2–31(a).    Trustee notes that a New Jersey Appellate Division case has interpreted this amendment to mean that only a plaintiff's "actual knowledge," as opposed to his or her "constructive knowledge," can defeat a fraudulent transfer claim. *Id.* at 7 (citing *Guido v. Spina*, 2010 WL 1928985, at *1 (App. Div. May 14, 2010)). The Trustee contends that under this amendment, the one-year tolling rule applies to transfers of real property even if a deed was recorded. *Id.*

The Trustee asserts that pursuant to Section 544(b), he has the same rights as any unsecured creditors to avoid transfers under applicable state law. *Id.* at 9. Therefore, Trustee contends that under New Jersey law, a cause of action with respect to a fraudulent transfer must

be brought within four years after the challenged transfer was made or, "if later, within one year after the transfer or obligation was discovered by the claimant." *Id.* (citing N.J.S.A. § 25:2–31(a)). The Trustee further asserts that the time limit on when he can bring a cause of action to avoid fraudulent transfers under the one-year safety web provisions of said statute does not begin to run until his appointment. *Id.* (citing *In re Halpert & Co, Inc.*, 254 B.R. 104, 122 (Bankr. D.N.J. 1999)). Accordingly, Trustee argues that the instant action is timely because the Complaint was brought within one year of the Trustee's appointment and acquisition of powers under Section 544(b), and thus within the one-year discovery limitation period of N.J.S.A. 25:2–31(a) and the two (2) year period for Trustee causes of action under 11 U.S.C. § 546. The Trustee further contends that Defendant's reliance on *Sasco, In re Bernstein*, or "any other precedent applying New Jersey statues, prior to 2002 is simply wrong." *Id.* at 10.

Third, the Trustee argues that Defendant cannot prove all the requisite elements of *res judicata*. The Trustee contends that failure to prove one element of *res judicata* is fatal to the application of the defense. *Id.* at 14 (citing *In re Hensler*, 248 B.R. 488, 491 (Bankr. D.N.J. 2000) (stating that in order invoke the doctrine of *res judicata* all three prongs must be satisfied)). With respect to the privity element, the Trustee "asks this Court to focus on the relationship between the 1997 Trustee and the Trustee herein." *Id.* The Trustee contends that "[s]ince the Trustee herein and the 1997 Trustee are neither the same party, nor in privity, the Court must find that *res judicata* does not apply." *Id.* In support, the Trustee cites to the principle that a trustee is the representative of the creditors in a bankruptcy estate and has a fiduciary relationship to such creditors. *Id.* at 15 (citing 11 U.S.C. § 704(1); *In re Martin*, 91 F.3d 389, 394 (3d Cir. 1996)). The Trustee here argues that he represents an entirely different set of creditors whose claims arose after the discharge was entered in the 1997 bankruptcy case.

*Id.* That the Trustee here is not a successor trustee, as would be proscribed by 11 U.S.C. 703, but serves in a different case with a different set of creditors. The Trustee contends that none of the case law cited by Defendant supports a finding that the Trustee here is in privity with the 1997 Trustee. For example, Trustee urges that a close reading of *In re Crasper*, cited by Defendant, states that a judgment of the Court in a prior proceeding is *res judicata* only as to the debts listed in that proceeding. *Id.* at 17 (citing *In re Crasper*, 142 B.R. 396, 397 (Bankr. D.Idaho 1992)). Trustee argues that he "represents an entirely different set of creditors whose claim arose after the discharge was entered in the 1997 bankruptcy." *Id.* at 15. By way of example, Trustee highlights Proof of Claim No. 3 filed by Raymond B. Cohen, CPA, asserting a claim in the present bankruptcy case for unpaid professional fees from the period of 2006 through 2007. *Id.* at 2. The Trustee contends that this is a 2016 debt and could not have been a debt in the Debtor's Previous Case. *Id.*

Lastly, the Trustee addresses his constructive trust claim, noting that "as an equitable remedy, if the Court finds that the tracing of the funds does not give the Estate an actual ownership right, the Trustee legally is entitled to impose a constructive trust on the River Vale Property for the benefit of the creditors holding the 2016 Debt whose rights have never been adjudicated by any court." *Id.* at 3.

*Defendant's Reply*

On May 31, 2016, the Defendant filed a Reply Brief in further support of the Motion to Dismiss Complaint for Failure to State a Claim, or in the alternative for Summary Judgment Dismissing the Complaint, and Compelling Plaintiff to Discharge Notice of *Lis Pendens*. Reply Brief, *Wolff v. Helen Tzanides*, Adv. No. 16-11410, ECF No. 9. Defendant argues that this matter is ripe for summary judgment and the Court must accept Defendant's Statement of

Undisputed Material Facts as true because the Trustee did not challenge these facts and because the Trustee did not dispute that the Motion is ripe for summary judgment. *Id.* at 2. Defendant further argues that "at a minimum" this Court must dismiss Count 2 of Trustee's Complaint because Trustee failed to set forth a basis other than 11 U.S.C. § 105 to warrant imposition of the remedy of a constructive trust. *Id.* Next, Defendant argues that while the Trustee inappropriately focuses on the 2002 deed transaction between the Defendant and Debtor, there is no issue as to the 1993 Deed or that the transfer of the Debtor's interest in the Marital Property to Defendant occurred in 1993, as that Deed is a matter of public record and was properly filed with the Bergen County Clerk's Office. *Id.* at 4. The Defendant urges that the Trustee's reference to the 2002 deed, a corrective deed, is erroneous. *Id.* at 3.

The Defendant urges that the Debtor's transfer of his interest in the Cresskill Property to Defendant was the subject of the 1998 Adversary Complaint, and that many of the same allegations and badges of fraud now cited by the current Trustee, including that the Debtor made the 1993 Deed transfer with actual intent to hinder, delay or defraud creditors, were contained in the 1998 action and that 1998 Complaint was dismissed "with prejudice". *Id.* at 3. Defendant further notes that the 1998 Adversary Complaint plead a cause of action under the New Jersey fraudulent transfer law seeking avoidance by the Trustee of the transfer pursuant to N.J.S.A. 25:2–1 *et seq.* as applied by 11 U.S.C. § 544. *Id.* at 5. The Defendant argues that this Court's February 1, 1999 Order established that the Debtor held no legal or equitable interest in the Cresskill Property and was not part of his 1997 bankruptcy estate; and the Cresskill Property is not an asset of the Debtor's 2016 estate. *Id.* Defendant urges that the Trustee here is impermissibly attempting to collaterally attack the settlement of the 1998 Adversary Proceeding. *Id.*

Defendant urges that there is no legal authority permitting the Current Trustee to challenge the exact same transfer *nunc pro tunc* to 1993 merely because the Debtor incurred debt after receiving his bankruptcy discharge in 1999. *Id.* at 6. The Defendant notes that the preamble to this Court's February 1, 1999 Settlement Order states "and the Court having considered the Trustee's assertion that there is no basis for the continued prosecution of the adversary proceeding and that his analysis has resulted in a determination that the transfer by the Debtor of his interest in the residence to his wife in November 1993 was not a fraudulent conveyance and is otherwise not avoidable." *Id.* Despite this, the Defendant asserts that the Current Trustee's Complaint mentions only the 2002 Deed and repeats many of the same allegations first asserted by Trustee Russo 18 years ago in the 1998 Adversary Complaint. *Id.*

In her Reply, the Defendant again asserts that as the Trustee has failed to cite the existence of any genuine issues of material fact, the matter is ripe for summary judgment. *Id.* at 9. Defendant argues that the Trustee's statute of limitations argument is premised on the false pretense that the 2002 Deed controls, when the 1993 Deed is the operative transfer document as demonstrated by the Court's February 1, 1999 Settlement Order – and that the recording of the 1993 Deed is the trigger date for statute of limitations purposes, and as well that the February 1, 1999 Settlement Order cuts off the rights of the Debtor's <u>future</u> creditors to challenge the same transfer *nunc pro tunc*. *Id.* at 9-10. Defendant asserts that there is no current creditor who can challenge the original 1993 Deed transfer under New Jersey law. *Id.* at 10.

Furthermore, with respect to the statute of limitations defense, Defendant argues that the Trustee's claims fail because he has not identified the existence of an unsecured creditor on whose behalf he can maintain a timely cause of action pursuant to New Jersey fraudulent transfer law and Section 544(b) of the Bankruptcy Code. *Id.* at 9 (citing *In re Bernstein*, 259 B.R. 555; *In*

*re NJ Affordable Homes Corp.*, 2013 Bankr. LEXIS 4798 (Bankr. D.N.J. Nov. 8, 2013)).
Defendant contends that it is hornbook law that when relying on Section 544(b), the Trustee
stands in the shoes of an unsecured creditor who could bring a timely claim against the
Defendant; therefore, the Trustee must at least be able to point to at least one unsecured creditor
who satisfies the NJ UFTA statute of limitations. *Id.* at 10-11 (citing *In re D'Angelo*, 491 B.R.
395, 404 (E.D. Pa. 2013); *In re Cybergenics Corp.*, 226 F.3d 237, 243 (3d Cir. 2000); *In re G-I
Holdings, Inc.*, 313 B.R. at 632). The Defendant contends that the Trustee cannot base his claim
on the New Jersey Division of Taxation's creditor status because the New Jersey Division of
Taxation, as alleged by the Trustee, holds a 2007 judgment lien against the Property and is
therefore adequately protected by a lien against non-debtor assets. *Id.* at 11 n.9. Defendant
further argues that because the 1993 Deed is the operative transfer document, the September 1,
1999 Settlement Order cuts off the rights of the Debtor's future creditors to go back in time and
challenge the transfer *nunc pro tunc*. *Id.*

Next, in support of her *res judicata* argument, Defendant argues that the Previous
Complaint and the Current Complaint allege the exact same causes of action and facts.
Defendant argues that the settlement of the earlier fraudulent transfer claims filed by Trustee
Russo, as reflected by this Court's February 1, 1999 Settlement Order, "conclusively established
that [Debtor] held no legal or equitable interest in the Cresskill Property." *Id.* at 5. Defendant
cautions that if this Court were to accept Trustee's theory that the Debtor's current Chapter 7
case represents new debt consisting of new creditors, "the floodgates will open in this District
and every single individual defendant who ever settled a fraudulent transfer claim with a
bankruptcy trustee will be exposed to the claw back claims of overreaching trustees in secondary
bankruptcy filings." *Id.* at 5-6.

Defendant argues that the defense of claim preclusion may be raised on a motion to dismiss and the court may take judicial notice of the record from a previous court proceeding between the parties. *Id.* at 12 (citing *Oneida Motor Freight Inc. v. United Jersey Bank,* 848 F.2d 414, 416 n.3 (3d Cir. 1988) (noting that claim preclusion and issue preclusion are the currently accepted terms for two different applications of the doctrine of *res judicata*); *Lubrizol Corp. v. Exxon Corp.,* 929 F.2d 960, 961, n.1 (3d Cir. 1991)). Defendant asserts that settlement agreements involve claim preclusion, not issue preclusion. *Id.* at 12 (citing *United States v. Int'l Bldg. Co.,* 345 U.S. 502, 505-506 (1953); *Bandai Am. Inc. v. Bally Midway Mfg. Co.,* 775 F.2d 70, 74 (3d Cir. 1985), *cert. den.* 475 U.S. 1047 (1986)).

Defendant contends that the three elements of *res judicata* here have been met. Defendant argues that the February 1, 1999 Settlement Order satisfies the final judgment element. *Id.* at 15 (citing *In re Medomak Canning,* 922 F.2d 895, 900 (1st Cir. 1990) (stating that court-approved settlements "receive[] the same *res judicata* effect as a litigated judgment)). Defendant contends that same principle applies to bankruptcy proceedings. *Id.* at 15 (citing, *e.g.*, *In re Patel,* 43 B.R. 500, 503 (N.D. Ill. 1984) ("bankruptcy [court] order approving a settlement is final and appealable under [28 U.S.C.] § 1334(a) because it determines the rights of the parties to the settlement"); *Cho v. Seventh Avenue Fine Foods Corp.,* 2016 U.S. Dist. LEXIS 56603 (S.D.N.Y. April 28, 2016)). Defendant argues that the second element of *res judicata*, that the claim must involve the same parties or those in privity, is met. While not conceding a lack of privity between the Current and Prior Trustees, Defendant asserts that the Current Trustee is in privity with the Debtor who was a Defendant in the 1998 Adversary Proceeding and settled his claim with the Prior Trustee for $2,500.00. *Id.* at 13-14. Defendant argues that the Debtor is bound by the February 1, 1999 Settlement Order and therefore the Current Trustee, who is in

21

privity with the Debtor is equally bound. *Id.* The Defendant further asserts that *res judicata* can apply to nonparties by "nonparty preclusion" if privity existed between the prior and present litigants. *Id.* at 14 (citing *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008); *In re Montgomery Ward, LLC*, 634 F.3d 732 (3d Cir. 2011)). Defendant asserts that it is well established that collateral estoppel, the issue preclusion component within the larger doctrine of *res judicata* applies where a nonparty is in privity with someone who was a party in the prior suit. *Id.* at 14 (citing *Richards v. Jefferson County*, 517 U.S. 793, 798-799, 116 S.Ct. 1761 (1996)). Defendant notes that among the exceptions to the general rule against nonparty preclusion is where a special statutory scheme, such as the Bankruptcy Code expressly forecloses subsequent litigation. *Id.* (citing *Taylor*, 553 U.S. at 893-896; *Nationwide Mut. Fire Ins. Co. v. Hamilton,* 571 F.3d 299, 310 n.13 (3d Cir. 2009)). Next, Defendant argues that the third element of *res judicata* is met because the instant proceeding involves the same cause of action plead in the 1998 Adversary Action. *Id.* at 19 (comparing the 1998 Adversary Complaint side by side with the 2016 Adversary Complaint). Here the Defendant argues that in determining whether two suits are based on the same cause of action the Third Circuit takes a broad view, evaluating whether there is "essential similarity of the underlying events giving rise to the various legal claims." *Id.* at 17 (citing *Corestates Bank, N.A. v. Huls Am. Inc.,* 176 F.3d 187, 194 (3d Cir. 1999); *United States v. Athlone Indus. Inc.*, 746 F.2d 977, 983-984 (3d Cir. 1984); *Sheridan v. NGK Metals Corp.,* 609 F.3d 239, 260 (3d Cir. 2010)). Defendant asserts that courts consider whether the acts complained of were the same, whether the material facts alleged in each suit were the same, and whether the witnesses and documentation required to prove such allegations were the same. *Id.* (citing *Athlone Indus., Inc.*, 746 F.2d at 984).

Lastly, Defendant argues that the settlement of the 1998 Adversary Action renders the

Current Trustee's claims moot. The Defendant alleges that the settlement of the 1998 adversary proceeding, which dismissed the prior fraudulent transfer claims against the Debtor and the Defendant arising from the Cresskill Property with prejudice, moots every "badge of fraud" that the Current Trustee has alleged in his Complaint. The Defendant asserts that affording finality to judgments of the Bankruptcy Court is an important part of bankruptcy proceedings in furtherance of orderly reorganization and settlement of debtor estates. *Id.* at 20 (citing *In re Revere Copper & Brass, Inc.,* 78 B.R. 17, 23 (S.D.N.Y. 1987)).

*Defendant's Supplemental Certifications Dated May 31, 2016 and June 1, 2016*

On May 31, 2016, Defendant filed a Supplemental Declaration of Glenn R. Reiser. *Wolff v. Helen Tzanides,* Adv. No. 16-1261, ECF No. 10. Attached to the Certification is a Proof of Claim filed in the present bankruptcy case by Raymond Cohen, C.P.A. in the amount of $4,928.00. *Id.; see also* Proof of Claim No. 3, dated April 6, 2016 filed on April 11, 2016. This Proof of Claim is based upon bills from Mr. Cohen dated March 2, 2006, October 12, 2006, and March 23, 2007. *See* Proof of Claim No. 3, at Page 4.

On June 1, 2016, Defendant filed a Second Supplemental Declaration of Glenn R. Reiser. *Wolff v. Helen Tzanides,* Adv. No. 16-1261, ECF No. 11. Defendant attached the May 22, 2002 Deed and the November 1, 1993 Deed to the Certification. Defendant describes the 2002 Deed as "a corrective Deed" and points to the following distinctions between the May 22, 2002 Deed and the 1993 Deed.

      a.  The marital provision appearing on the second page of the 1993 Deed cites N.J.S.A. 3B:2B-2 and 3 (My [Mr. Reiser's] research has not uncovered the existence of a statute in New Jersey bearing that citation).

      b.  The marital provision appearing on the first page of the 2002 Deed cites N.J.S.A. 3B:28-3, not N.J.S.A. 3B:2B-2 and 3. In addition, the marital provision of the 2002 Deed cites New Jersey's equitable distribution statute, N.J.S.A. 2A:34-23, and also N.J.S.A. 37:2-18. There is no mention of "equitable distribution" in the 1993 Deed.

    c. The 2002 Deed is a Quitclaim Deed, as confirmed by the description appearing in the bottom lower left footer on page 1 - *Deed - Ind or Corp Quitclaim (C) Easy Soft, Inc. 4/2000*. The 2002 Deed does not contain a "Promise by Grantor" provision, while the 1993 Deed does.

    d. The legal description of the property in Schedule A to the 2002 Deed also identifies the Cresskill Property by its street address (45 [sic] Eisenhower Drive, Cresskill, New Jersey), whereas the legal description in Schedule A to the 1993 does not.

Second Supplemental Declaration of Glenn R. Reiser, at ¶¶ 4-5; Declaration of Helen Tzanides, ¶ 5.

**Oral Argument**

This Court held a Hearing on the present Motion on October 11, 2016.

   *i.*  *Defendant's Argument*

Defendant first argued that the Complaint fails to state a claim under a motion to dismiss standard because the Trustee did not assert the right of an unsecured creditor and did not name an unsecured creditor in the Complaint itself. Defendant urged, however, that the factual record is uncontested and that this Court could resolve this motion under the summary judgment standard. Defendant argued that the February 1, 1999 Settlement Order entered in the Previous Case is a valid and binding agreement and that creditors had notice of the settlement and even objected to it. Next, Defendant argued that the Complaint filed by Mr. Russo in the Previous Case and the Trustee's Current Complaint contains the same causes of action and relevant factual allegations. Defendant noted that Mr. Russo's Complaint challenged the validity of the 1993 deed transfer of the Property and asserted actual intent to hinder, delay, and defraud under the NJ UFTA. Defendant argued that *res judicata* applies to bar Trustee's claims in this Action because the Settlement Order reflects this Court's finding that there was no fraudulent transfer and that the Cresskill Property was not part of the Debtor's bankruptcy estate. Debtor argued that the settlement was binding on Debtor's previous creditors and is also binding upon his creditors in

the Current Case. Defendant asserted that Debtor's current creditors could not have relied on the fact that he owned a home because he did not own the Cresskill Property by virtue of the February 1, 1999 Settlement Order in the Previous Action. Defendant emphasized that case law in the Third Circuit favors settlements, especially in the bankruptcy context.

Defendant argued that the privity requirement for *res judicata* is met because there is privity between the two Trustees as to this transaction and because there is privity between the Current Trustee and the Debtor. Defendant argued that the Third Circuit has recognized that privity element of *res judicata* does not require an exact party matchup under certain circumstances, referred to as "nonparty preclusion," citing *Montgomery Ward; Taylor v. Sturgell, Richards v. Jefferson County.* Defendant argued that in *Montgomery Ward* the court recognized that substance rather than the form governs the privity requirement.

Defendant further argued that the Trustee inappropriately ignored the 1993 Deed which was searchable in favor of the 2002 Deed. Defendant noted that the 2002 Deed, a quitclaim deed, was merely a corrective deed because the 1993 deed had cited the wrong New Jersey statute for equitable distribution. Thus, Defendant concluded that the 1993 deed is controlling in this matter for determining the date of transfer, as it was in the Previous Case. Defendant asserted that the Trustee does not appear to dispute that the September 1, 1999 Settlement Order is a final order for purposes of *res judicata* and that the Current Action is based upon the same set of facts as in the Previous Action.

Next, Defendant disputed Trustee's contention that the state court statute of limitations did not begin to run until the date the Trustee was appointed. Defendant argued that under *Bernstein* the Trustee must identify an unsecured creditor as a foundation for his Section 544(b) claim. Defendant argued that the Trustee has not identified a qualifying creditor. Defendant

25

argued that the Trustee may not rely upon Mr. Cohen's proof of claim for accounting services rendered to the Tzanideses in 2006 and 2007 in support of his Section 544(b) argument because the six-year statute of limitations for breach of contract on that claim has expired.[3]    Defendant further argued that the Trustee may not rely upon the IRS's claim because the IRS has a lien against the Defendant's current real property.

Defendant argued that *res judicata* also bars Defendant's constructive trust claim, as that claim relies upon the same transfer that was found to not be property of the estate under the February 1, 1999 Settlement Order. Defendant further argued that there is no "wrongful act" to support a constructive trust theory because the Debtor and the Defendant justifiably relied on the 1999 Settlement Order with respect to the later transfers and further that reliance on § 105 and constructive trust principles is not appropriate when the Trustee is also relying on specific Bankruptcy Code provisions regarding fraudulent transfers. Lastly, the Defendant requested that the Trustee be compelled to remove the *lis pendens* on the Defendant's current property.

*ii.    Trustee's Argument*

First, Trustee argued that the summary judgment standard should not apply to this case because there are factual issues with respect to intent and that a statement of undisputed facts is not required under the Local Rules as amended.[4]    Trustee argued that this Court instead should

---

[3] N.J.S.A. 2A:14–1 contains a six-year statute of limitations for contract claims not involving the sale of goods.

[4] Local Bankruptcy Rule 7056-1, states:

> **(a) Statement of Material Facts Not in Dispute.** A motion for summary judgment must include a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion. A motion for summary judgment unaccompanied by a statement of material facts not in dispute may be dismissed. The opponent of summary judgment must file, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed will be deemed undisputed for purposes of the summary judgment motion. In addition, the opponent may also file a supplemental statement of disputed

apply the motion to dismiss standard to the instant Motion. The Trustee noted that he is asserting an actual fraudulent transfer claim, as opposed to a constructive fraudulent transfer claim. Trustee argued that an actual fraudulent transfer claim is subject to tolling under the NJ UFTA, which permits equitable tolling for one year from the date the fraud is actually discovered. The Trustee contends that under Section 544(b), he need not identify a creditor because the Trustee stands in the shoes of all unsecured creditors. Trustee argues that because the NJ UFTA was amended to provide for actual notice tolling, the Trustee need not identify an unsecured creditor, but rather there should be a presumption that such creditor exists at the time the Debtor's petition was filed. The Trustee acknowledged, however, that at trial he may have to identify an unsecured creditor in order to ultimately prove his claim. Alternatively, Trustee stated that should the Court reject his argument that an unsecured creditor need not be identified, he is willing and able to amend his Complaint to identify a specific unsecured creditor.

Trustee argued that under the New Jersey state fraudulent transfer statute future creditors are considered and that for purposes of this motion the 1993 deed transfer should govern. The

---

material facts, in separately numbered paragraphs citing to the affidavits and other documents submitted in connection with the motion, if necessary to substantiate the factual basis for opposition. The movant must respond to any supplemental statement of disputed material facts, with its reply papers.

**(b) Format.** Each statement of material facts may be included in a party's brief as part of the Statement of Facts with the separate numbering required by this Rule and may not contain legal arguments or conclusions of law.

D.N.J. LBR 7056-1.

The comment to the rule explains:

This Rule is new. Subdivision (a) is derived from Local Civil Rule 56.1. Subdivision (b) permits the required Statement of Material Facts Not in Dispute to be included in a party's brief as part of the Statement of Facts with the separate numbering required by this Rule, thereby eliminating the need for the filing of a separate document.

2017 NEW JERSEY COURT ORDER 3920 (C.O. 3920).

Accordingly, the said Local Rule permits the statement of material facts to be included in the party's brief and eliminates the need to file a separate document.

Trustee urged that the Prior Trustee's dismissal of the action with prejudice based on an allegation of insolvency did not settle the actual intent fraudulent conveyance claim but merely dismissed the claim. The Trustee urged that future creditors should not be bound by the prior September 1, 1999 Settlement Order such that Defendant may not rely upon this Court's approval of the settlement for purposes of establishing a judgment on the merits as to the actual fraud claim. While the Trustee acknowledged that the previous claim and the current claim contain the same operative facts, he argued that there was no final judgment on the merits because the previous actual fraudulent intent claim was dismissed and there was no judicial determination as to actual fraud. The Trustee suggested that approval of this settlement is akin to a matrimonial court's approval of a property settlement agreement.

Next, Trustee argued that there is no privity between the Prior Trustee and the Current Trustee. The Trustee argued that the Current Trustee represents an entirely different set of creditors, and that in exercising his business judgment, the trustee may make different determinations with respect to the causes of actions he wishes to pursue. The Trustee asserted that even if the prior bankruptcy case was reopened, any claims that arose after the claims bar date in the prior case would not be subject to the discharge granted to the Debtor in the Previous Case. The Trustee also disputed Defendant's argument that the Debtor and the Current Trustee are in privity as to this matter. The Trustee argued that the former Trustee, Mr. Russo could not have been in privity with the Debtor because they were opposed to one another in the Previous Action and, nor could the Current Trustee be in privity with the Debtor here. As to constructive trust, the Trustee urged that it is a remedy designed to implement the provisions of § 550 of the Bankruptcy Code as the Cresskill Property has been sold and the Trustee is seeking to trace the proceeds of the sale of that property to the Riverdale Property.

28

*iii.    Defendant's Response*

Defendant argued that the Trustee has not disputed any material fact here and that the

September 1, 1999 Settlement Order should be treated as a final judgment for *res judicata*

purposes. Defendant noted that in the Previous Action, the Debtor paid Trustee Russo the sum

of $2,500 as consideration for the settlement. Defendant further noted that two creditors initially

objected to the Settlement although they ultimately withdrew their objections before the

September 1, 1999 Settlement Order was entered. The Defendant asserted that this Court

approved the settlement as fair and reasonable and that the Trustee is improperly attempting to

collaterally attack the September 1, 1999 Settlement Order. Defendant argued that the Current

Trustee cannot bring the Cresskill Property into this bankruptcy estate as that property was

previously determined not to be part of the prior bankruptcy estate. Defendant argued that the

Current Trustee stands in the shoes of the Debtor, and because the Debtor could not challenge

the transfer, neither can the Current Trustee. The Defendant further argued that no future

creditor could have relied upon the Debtor's ownership of the Cresskill Property because the

Debtor did not own the Property as a result of the 1993 transfer.

*iv.    Trustee's Response*

The Trustee responded that under the NJ UFTA a transfer can be fraudulent as to a future

creditor. The Trustee urged that the $2,500 was paid by the Debtor, also a Defendant in the prior

action on a § 727 claim. The Trustee did not contest that the Cresskill Property was not property

of the estate as it had been transferred and was during the prior case the subject of the Prior

Trustee's avoidance action.

*Post-Hearing Submissions*

On November 10, 2016, the Defendant filed a letter to inform the court of additional case law in support of her *res judicata* defense. Reiser Letter, *Wolff v. Helen Tzanides*, Adv. No. 16-1261, ECF No. 16. The letter cites a case from the Third Circuit, *Martinez v. Bank of Amer., N.A.*, 664 Fed. App'x. 250 (3d Cir. 2016). Defendant notes that while the case is not directly on point, it cites cases that support the proposition that an earlier dismissal based upon a settlement agreement constitutes a final judgment on the merits in a *res judicata* analysis. *See id.* at 254 (citing *Ford–Clifton v. Dep't of Veterans Affairs*, 661 F.3d 655, 660 (Fed. Cir. 2011) ("It is widely agreed that an earlier dismissal based on a settlement agreement constitutes a final judgment on the merits in a res judicata analysis," and collecting cases); *Interdynamics, Inc. v. Firma Wolff*, 653 F.2d 93, 96-97 (3d Cir. 1981)).

On November 11, 2016, the Trustee filed a response to Defendant's letter. Andrea Dobin Letter, *Wolf v. Helen Tzanides*, Adv. No. 16-1261, ECF No. 17. The Trustee asserts that *Martinez* is neither controlling i.e. precedential, nor relevant, and that the letter amounts to an attempt by the Defendant to cite case law not previously presented in the submitted briefs.

On November 11, 2016, Defendant filed a response to Trustee's Letter. Resier Second Letter, *Wolff v. Helen Tzanides*, Adv. No. 16-1261, ECF No. 17. Defendant asserted that *Martinez* and the cases cited are pertinent to the instant Motion and that Plaintiff is not prejudiced by them having been cited to the Court post-hearing. *Id.*

## LEGAL STANDARDS

### A. Motion to Dismiss Standard

A motion to dismiss is brought pursuant to Federal Rule of Civil Procedure 12(b)(6), which is made applicable in bankruptcy court by Federal Rule of Bankruptcy Procedure 7012. Fed. R. Civ. P. 12(b)(6); Fed. R. Bankr. P. 7012. When considering a motion to dismiss, a court

must accept all well-pleaded allegations in the complaint as true, view them in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1973 (2007); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).

The United States Supreme Court has set forth a two-step analysis for adjudicating a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949-50. First, a court should identify and reject labels, conclusory allegations, and formulaic recitation of the elements of a cause of action. Second, a court must draw on its judicial experience and common sense to determine whether the factual content of a complaint plausibly gives rise to an entitlement to relief. The court must infer more than the mere possibility of misconduct. *Id.* This does not impose a "probability requirement" at the pleading stage, but requires a showing of "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 556).

In deciding motions to dismiss under Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of the claim. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). A court may also take judicial notice of a prior judicial opinion.

31

*McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009); *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

The Third Circuit has held that if a claim is vulnerable to dismissal under Rule 12(b)(6) and the plaintiff moves to amend, "leave to amend generally must be granted unless the amendment would not cure the deficiency." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). *See also Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004*); Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173, 1196 (3d Cir. 1994).

A Rule 12(b)(6) motion may be based on *res judicata* if the defense is apparent on the face of the complaint. *Rycoline Prod's v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997). The same is true when the motion is premised on a statute of limitations defense. *Id.*

### B. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a), made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7056, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." FED. R. CIV. P. 56(a); FED. R. BANKR. P. 7056.[5]

The United States Supreme Court has defined an "issue of material fact" as a question which must be answered in order to determine the rights of the parties under substantive law, and which can only properly be resolved "by a finder of fact because [it] may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see also Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 521 (3d Cir. 2004) ("A fact is material when its

---

[5] The quoted language is taken from the 2010 revision of Rule 56(a), which replaces the previous Rule 56(c). Notably, it replaces "genuine issue of material fact" with "genuine dispute as to any material fact." Certain cited cases predate this Rule change use the older terminology.

resolution 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'") (*citing Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003).  Once the movant meets its burden, the burden shifts to the nonmoving party, who must present evidence establishing that a genuine dispute of material fact exists, making it necessary to resolve the difference at trial. *Knauss*, 289 F. Supp. 2d at 549. Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (citation omitted).

Inferences and facts should be construed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Sempier v. Johnson & Higgins*, 45 F.3d 724, 727 (3d Cir. 1995).  However, parties opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586.  The nonmovant may not rely on mere allegations but must present actual evidence raising a genuine dispute of material fact. *Anderson*, 477 U.S. at 249.  In addition, a motion for summary judgment will not be defeated by "the mere existence" of some disputed facts. *Am. Eagle Outfitters v. Lyle & Scott Ltd.,* 584 F.3d 575, 581 (3d Cir. 2009).  "If the evidence [offered by the nonmoving party] is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).  "[O]nly disputes over those facts 'that might affect the outcome of

the suit under the governing law will properly preclude the entry of summary judgment.'" *DeHart v. Horn,* 390 F.3d 262, 267 (3d Cir. 2004) (*citing Anderson*, 477 U.S. at 248).

Summary judgment may be proper even though some material facts remain disputed if, after all inferences are drawn in favor of the non-moving party, the moving party is entitled to judgment as a matter of law. "[T]he inquiry involved in a ruling on a motion for summary judgment…necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Anderson*, 477 U.S. at 252.

The Third Circuit has held that the purpose of summary judgment is to avoid an unnecessary trial which results in delay and expense, by promptly disposing of any actions in which there is no genuine dispute of material fact. *Tomalewski v. State Farm Life Ins. Co.*, 494 F.2d 882, 884 (3d Cir. 1974). However, summary judgment is characterized as a "drastic remedy." *Id.* The Third Circuit has stated that "where there is the slightest doubt as to the facts," summary judgment may not be granted. *Id.* At the summary judgment stage, therefore, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss*, 289 F. Supp. 2d at 549 (*citing Anderson,* 477 U.S. at 249).

## C. Section 544(b) Fraudulent Transfer

The purpose of fraudulent conveyance law is to make available to creditors those assets of the debtor that are rightfully a part of the bankruptcy estate, even if they have been transferred away. *In re G-I Holdings, Inc.*, 313 B.R. 612, 632 (Bankr. D.N.J. 2004) (citing *Buncher Co. v. Official Comm. Of Unsecured Creditors of GenFarm Ltd. P'ship IV*, 229 F.3d 245, 250 (3d Cir. 2000)).

34

Although the Bankruptcy Code provides the trustee with the rights of a judgment creditor, the extent of the trustee's rights is determined by applicable state and federal law.  5 Collier on Bankruptcy P 544.06 (16th 2016); *see In re Bridge*, 18 F.3d 195, 200 (3d Cir. 1994) ("although the trustee's strong arm powers arise under federal law, the scope of these avoidance powers vis-a-vis third parties is governed entirely by the substantive law of the state in which the property in question is located as of the bankruptcy petition's filing.").

The Trustee's ability to pursue fraudulent transfers premised on state law is found at 11 U.S.C. § 544(b)(1), which provides in part as follows:

> [T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544(b)(1).

"When recovery is sought under section 544(b) of the Bankruptcy Code, any recovery is for the benefit of all unsecured creditors, including those who individually had no right to avoid the transfer." *Buncher Co.*, 229 F.3d at 250; *see also Official Comm. Of Unsecured Creditors of Cybergenics Corp. v. Chinery (In re Cybergenics Corp.)*, 226 F.3d 237, 250 (3d Cir. 2000).

It is well-settled that for a trustee to bring a cause of action pursuant to the Section 544(b) avoiding power, a Trustee must demonstrate the existence of an actual unsecured creditor that existed on the bankruptcy petition date who could have also brought the claim under applicable state or federal law.  *In re G-I Holdings Inc.*, 313 B.R. at 632; *In re Bernstein*, 259 B.R. at 559; *In re Affordable Homes Corp.*, No. 05-60442, 2013 WL 6048836, at *32-33 (Bankr. D.N.J. Nov. 8, 2013); *In re Dwek*, No. 09-1256, 2011 WL 1300188, at *2 (Bankr. D.N.J. Apr. 4, 2011).

In *G-I Holdings*, this Court explained:

Significantly, to invoke § 544(b), the trustee or debtor-in-possession must show that at least one of the present unsecured creditors holds an allowable claim against whom the transfer or obligation was invalid. *Young v. Paramount Communications, Inc. (In re Wingspread Corp.)*, 178 B.R. 938, 945 (Bankr.S.D.N.Y.1995)(citing 5 Collier on Bankruptcy ¶ 544.03[1] (15th ed.1994)); *Moore v. Bay (In re Estate of Sassard & Kimball, Inc.)*, 284 U.S. 4, 5, 52 S.Ct. 3, 4, 76 L.Ed. 133 (1931).

Furthermore, the rights of the trustee or debtor-in-possession to avoid a transfer are "completely derivative of those of an actual unsecured creditor." *Id.* That is, § 544(b) confers upon the trustee or debtor-in-possession "no greater rights of avoidance than the creditor would have if it were asserting invalidity on its own behalf." 5 Collier on Bankruptcy ¶ 544.09[3] (15th rev.ed.2003). If the creditor is "deemed estopped to recover upon a claim, or is barred from recovery because of the running of a statute of limitations prior to the commencement of the case, the trustee [or debtor-in-possession] is likewise estopped or barred." *Id.* The overall effect of § 544(b), then, "is to clothe the trustee [or debtor-in-possession] with no new or additional rights ... over that possessed by a creditor, but simply puts [the trustee or debtor-in-possession] in the shoes of the latter, and subject to the same limitations and disabilities that would have beset the creditor in the prosecution of the action on [its] own behalf." *Id.* (citing *Davis v. Willey*, 263 F. 588, 589 (N.D.Cal.1920), aff'd, 273 F. 397 (9th Cir.1921)). *See also First Union Nat'l Bank v. Gibbons (In re Princeton–New York Investors, Inc.)*, 219 B.R. 55, 61 (D.N.J.1998).

313 B.R. at 633.

Section 546(a) establishes certain limitations on the trustee's avoidance powers.   It provides:

**(a)** An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—

**(1)** the later of—

**(A)** 2 years after the entry of the order for relief; or

**(B)** 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

**(2)** the time the case is closed or dismissed.

11 U.S.C. § 546(a).

Section 546(a) is designed to "give[] the trustee some breathing room to determine what claims to assert under § 544." *Matter of Princeton-N.Y. Inv'rs, Inc.*, 219 B.R. 55, 65 (D.N.J. 1998) (citing *Matter of Princeton-N.Y. Inv'rs, Inc.*, 199 B.R. 285, 297 (Bankr. D.N.J. 1996)). Notably, however, a trustee has no cause of action under Section 544(b) and does not receive the extension of time afforded to him or her to sue under Section 546(a) "if the creditor in whose place the Trustee stands could not bring a timely action at the commencement of the Debtor's global bankruptcy proceeding." *In re NJ Affordable Homes Corp.*, 2013 WL 6048836, at *33 (citing *In re Bernstein*, 259 B.R. at 559). "The Code does not resurrect a cause of action which did not exist as of the petition date." *In re Bernstein*, 259 B.R. at 559. Therefore, the Trustee has no cause of action under Section 544(b) if the creditor in whose place the Trustee stands could not have brought a timely action under state law at the commencement of the Debtor's bankruptcy proceeding.

**D. New Jersey's Uniform Fraudulent Transfer Act**

Actual and constructive fraudulent transfers may be avoided pursuant to New Jersey's Uniform Fraudulent Transfer Act, N.J.S.A. 25:2–20 *et seq.* ("UFTA"). The purpose of the NJ UFTA is to prevent a debtor from placing his or her property beyond a creditor's reach. *Gilchinsky v. Nat'l Westminster Bank N.J.*, 159 N.J. 463, 475 (1999). "Underlying the Act is the notion that a debtor cannot deliberately cheat a creditor by removing his property from the jaws of execution." *Id.* (internal quotation omitted).

N.J.S.A. 25:2–25, entitled "Transfers fraudulent as to present and future creditors" provides:

A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

a. With actual intent to hinder, delay, or defraud any creditor of the debtor; or

b. Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(1) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(2) Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they become due.

N.J.S.A. 25:2–25.

Further, N.J.S.A. 25:2–27 provides an additional avenue for avoiding fraudulent transfers under New Jersey law as to present creditors. It provides as follows:

a. A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

b. A transfer made by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made if the transfer was made to an insider for an antecedent debt, the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

N.J.S.A. 25:2–27.

Significantly, N.J.S.A. 25:2–31 contains the statute of limitations periods for avoiding fraudulent transfer actions under the New Jersey UFTA. This section provides in relevant part:

A cause of action with respect to a fraudulent transfer or obligation under this article is extinguished unless action is brought:

a. Under subsection [25:2–25a], within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation *was discovered* by the claimant;

38

b. Under subsection [25:2–25b] or subsection [25:2–27a], within four years after the transfer was made or the obligation was incurred; or

c. Under subsection [25:2–27b] within one year after the transfer was made or the obligation was incurred.

N.J.S.A. 25:2–31 (2002) (emphasis added).

The prior version of this Statute stated that a claim brought pursuant to N.J.S.A. 25:2–25(a) was extinguished unless the action was brought within four years after the transfer was made or the obligation was incurred or, if later, "within one year after the transfer or obligation was *or could reasonably have been* discovered by the claimant." *L.* 2002, *c.* 100, § 1 (amending N.J.S.A. 25:2–31) (emphasis added). However, in 2002, the New Jersey Legislature deleted the phrase "or could reasonably have been" in response to the New Jersey Supreme Court's decision in *Sasco 1997 NI, LLC v. Zudkewich*, 166 N.J. 579 (2001). In *Sasco*, the defendant transferred his home, later sold for $1.2 million, to his wife for nominal value months after he personally guaranteed two large commercial business loans in 1989. *Id.* at 582. The lender gave notice of default to the primary obligor in December 1994, and judgment was entered against the defendant in July 1997. *Id.*  In April 1998, the creditor sued to set aside the transfer as fraudulent pursuant to the NJ UFTA. *Id.*  The trial court dismissed the claim as untimely, and the Appellate Division affirmed. *Id.* The first question that the New Jersey Supreme Court considered was whether the four-year NJ UFTA statute of limitations began to run on the date the defendant transferred the property to his wife or at the time the judgment was entered. The Court held that the Statute runs from the date of the transfer. *Id.* at 586, 596. The second issue presented was whether the one year tolling provision applied; that is, whether the commercial creditor could "reasonably have...discovered" the transfer. *Id.* at 588. Applying its ruling prospectively, the court held that "a reasonable creditor would perform an asset search when the

loan goes into default." *Id.* at 591. Because such an asset search would have disclosed the transfer alleged to have been fraudulent, the complaint in *Sasco* was untimely filed more than four years after the transfer and more than a year after the plaintiffs' loan went into default.

N.J.S.A. 25:2–31(a) was amended to delete from the statute the phrase "or could reasonably have been" preceding the word "discovered". As a result, the statute set a one-year limitations period from the date the allegedly fraudulent transfer "was discovered" by the creditor. *See Rosario v. Marco Const. & Management Inc.*, 443 N.J. Super. 345, 348 (App. Div. 2016); *Guido v. Spina*, 2010 WL 1928985, at *2 (App. Div. May 14, 2010). In *Guido*, plaintiffs obtained a judgment against the defendants in 2006. *Id.* at *1. After obtaining judgment, plaintiffs discovered that in June 2001, a deed was recorded by which one of the defendants transferred his undivided joint interest with his wife in real property in Chester, New Jersey to her individually for $10. *Id.* Plaintiffs then filed a second complaint asking the court to void the transfer under N.J.S.A. 25:2–29 to the extent necessary to satisfy plaintiffs' judgment against the defendant. *Id.* at *2. The defendant moved to dismiss the complaint under the NJ UFTA's statute of limitations. The trial court granted the motion after conducting a plenary hearing. *Id.* at *3. The Appellate Division reversed, finding that "[n]othing in the record demonstrates that plaintiffs actually discovered the June 2001 transfer of the Chester property before entry of that judgment." *Id.* Plaintiff Guido testified that his attorney conducted a judgment search after the judgment was entered, and Plaintiffs learned then about the June 2001 transfer of the Chester property. Plaintiffs filed their complaint alleging fraudulent transfer on May 24, 2007. This chronology establishes that plaintiffs filed their amended complaint more than four years after but within one year of discovering the transfer. Therefore, the complaint was timely filed under the amended statute. *Id.* at *3.

Bankruptcy courts in this District have similarly applied the amended Statute in the context of Section 544(b) claims. In *G-1 Holdings, Inc.*, 313 B.R. 612, this Court considered a motion filed by the Official Committee of Asbestos Claimants seeking in part permission to commence an adversary proceeding as representative of the Debtor's estate for purposes of avoiding and recovering the transfer of the debtor's roofing business to a third party as a fraudulent transfer pursuant to § 544(b) of the Bankruptcy Code and the UFTA codified in the State of New Jersey at N.J.S.A. 25:2–20 to –34. *Id.* at 631-32. The debtor and others objected to the motion, in part, under the UFTA statute of limitations. The Committee argued that the "discovery rule" embodied in the New Jersey UFTA operated in favor of the asbestos claimants some of whose diseases did not become manifest until well after the challenged transaction. *Id.* at 636. This Court agreed, finding that: "it is reasonable to expect that it is possible that at least one claimant exists who was unaware of any asbestos-related injury prior to one year before [the debtor] filed for bankruptcy." *Id.* at 639-40 (citing *Lippe v. Bairnco Corp.*, 225 B.R. 846, 851 (S.D.N.Y. 1998), *on reargument*, 229 B.R. 598 (S.D.N.Y. 1999) *aff'd*, 2004 WL 765061 (2d Cir. 2004)). If so, express tolling provisions agreed to by the parties in a certain Order Granting a Preliminary Injunction entered by the bankruptcy court did not bar fraudulent transfer actions from being filed. *Id.* at 640.

In *NJ Affordable Homes*, Bankruptcy Judge Donald Steckroth considered a case in which the chapter 7 trustee brought approximately 400 adversary complaints against any individual or entity that held an interest in 390 real properties either owned by the debtor or in which the debtor held an interest on the petition date. 2013 WL 6048836, at *1. The complaints sought to, among other things, avoid liens of the individual defendants and preserve the mortgages for the benefit of the debtor's estate. *Id.* at *2. Prior to the bankruptcy filing the debtor purportedly

41

acted as a real estate investment corporation registered in the State of New Jersey. *Id.* at \*3. The trustee's complaint identified a "Ponzi scheme" whereby the debtor defrauded investors, using funds borrowed from investors and financial institutions to purchase, renovate and sell residential and commercial properties. *Id.*  The Debtor and its principal caused the debtor and its affiliates to repeatedly transfer real estate properties among themselves in an effort to artificially inflate property values and sale prices. *Id.*  The trustee sought to avoid pre-petition transfers of the debtor's property and its affiliates pursuant to the actual and constructive fraud provisions of the Bankruptcy Code and the New Jersey UFTA.  The defendants filed motions to dismiss based, in part, on the NJ UFTA's statute of limitations.  In considering whether the one-year tolling provision applied, the court recognized that "the statute as amended alters the tolling provision to provide a one-year limitation upon actual discovery." *Id.* at \*31 (citing N.J.S.A 25:2–31(a)).  Looking to the legislative history of the UFTA, Judge Steckroth noted that, "[a]s reflected in the Assembly Notes, the Legislature made a conscious choice in eliminating the constructive discovery rule." *Id.* at \*32 (citing N.J. Leg. 100, 220th Leg. 1st Sess. Ch. 100 (N.J. 2002)).  The court held:

> Given the Trustee's allegation that an unsecured creditor of the Debtor exists, who did not have *knowledge* of the mortgage transactions at issue and who could have filed a timely pre-petition complaint under New Jersey's Uniform Fraudulent Transfer Act, the Defendants' motions to dismiss are denied insofar as they assert that the Trustee's actions are untimely ..."

*Id.* at \*33 (emphasis added) (citing *In re Bernstein*, 259 at 560).

## E. Res Judicata

The United States Supreme Court has held that the full faith and credit statute, 28 U.S.C. § 1738, requires federal courts to apply state-law rules of *res judicata* based on "concerns of comity and federalism." *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 380, 105

S. Ct. 1327, 84 L.Ed.2d 274 (1985) (citations omitted).[6]   According to the Court, *res judicata*

"has the dual purpose of protecting litigants from the burden of relitigating an identical issue

with the same party or his privy and of promoting judicial economy by preventing needless

litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326, 99 S. Ct. 645, 58 L. Ed. 2d

552 (1979).   The Third Circuit has noted that "[t]he doctrine of res judicata bars not only claims

that were brought in a previous action, but also claims that could have been brought." *Mullarkey*

*v. Tamboer (In re Mullarkey)*, 536 F.3d 215, 225 (3d Cir. 2008).

According to the New Jersey Supreme Court,

> The doctrines of collateral estoppel, issue preclusion, res judicata, and the
> like serve the important policy goals of finality and repose; prevention of
> needless litigation; avoidance of duplication; reduction of unnecessary
> burdens of time and expenses; elimination of conflicts, confusion and
> uncertainty; and basic fairness…If an issue between the parties was fairly
> litigated and determined, it should not be relitigated.

*First Union Nat'l Bank v. Penn Salem Marina, Inc.*, 190 N.J. 342, 352 (2007) (citations omitted).

The Third Circuit has explained that

> [b]oth New Jersey and federal law apply res judicata or claim preclusion
> when three circumstances are present: (1) a final judgment on the merits in
> a prior suit involving (2) the same parties or their privies and (3) a
> subsequent suit based on the same cause of action.

*In re Mullarkey*, 536 F.3d at 225; *accord McNeil v. Legislative Apportionment Comm'n of N.J.*,

177 N.J. 364, 395 (2003).

"Although the contours of a bankruptcy case make its application somewhat more

difficult than in other contexts, the doctrine of res judicata is fully applicable to bankruptcy court

---

[6] The statute states, in relevant part, that "The … judicial proceedings of any court of any [State, Territory, or Possession of the United States] shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738.

decisions." *In re Target Indus., Inc.*, 328 B.R. 99, 115–16 (Bankr. D.N.J. 2005) (citing *Katchen v. Landy*, 382 U.S. 323, 334, 86 S. Ct. 467, 15 L. Ed. 2d 391 (1966)). Moreover, *res judicata* is applicable to final orders issued by the bankruptcy court. *See, e.g.*, *NovaCare Holdings, Inc. v. Mariner Post–Acute Network, Inc. (In re Mariner Post–Acute Network, Inc.)*, 267 B.R. 46, 52–53 (Bankr. D.Del. 2001) (citing numerous cases for the proposition that final orders of a bankruptcy court are given res judicata effect).

"A privy is one who is so identified in interest with another that he represents the same legal right." *In re Silver Mill Frozen Foods, Inc.*, 32 B.R. 783, 785 (Bankr. W.D. Mich. 1983) (citing *U.S. v. California Bridge & Construction Co.*, 245 U.S. 337, 38 S. Ct. 91, 62 L. Ed. 332 (1917)). The Third Circuit has noted that *"[r]es judicata* may apply to a successor in interest despite the general rule against non-party preclusion." *In re Montgomery Ward, LLC*, 634 F.3d 732, 737, n.5 (3d Cir. 2011) (citing *Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S. Ct. 2161, 171 L. Ed. 155 (2008)). The court in *Montgomery* noted that the Supreme Court listed five (5) exceptions to the general rule against non-party preclusion: (1) where the nonparty agrees to be bound by a prior judicial determination between other parties; (2) where the nonparty was adequately represented in the prior litigation by someone with the same interests; who [was] a party (3) where the nonparty assumed control of the prior litigation;(4) where the nonparty is the proxy of agent of a party to the prior litigation; and (5) were a special statutory scheme, such as bankruptcy, expressly forecloses subsequent litigation. *Id.* at 893-96. The Supreme Court in *Taylor v. Sturgell* also set forth as an exception:

> a variety of pre-existing "substantive legal relationship[s]" between the person to be bound and the party to the judgment Qualifying relationship include, but are not limited to, preceding and succeeding owners of property, bailee and bailor, and assignee and assignor.

553 U.S. at 894 (internal citation omitted).

To assess conformance with the third prong, which requires the "same cause of action" or

the "same transaction or occurrence," courts must consider the following four factors:

> (1) whether the acts complained of and the demand for relief are the same (that is,
> whether the wrong for which redress is sought is the same in both actions)...; (2)
> whether the theory of recovery is the same; (3) whether the witnesses and
> documents necessary at trial are the same (that is, whether the same evidence
> necessary to maintain the second action would have been sufficient to support the
> first)...; and (4) whether the *material* facts alleged are the same.

*Culver v. Ins. Co. of N. Am.*, 115 N.J. 451, 461-62 (1989) (citations omitted); *accord Mattson v.*

*Hawkins (In re Hawkins)*, 231 B.R. 222, 229 (D.N.J. 1999) (Wolfson, J.).

## F. <u>Constructive Trust</u>

A constructive trust is an available remedy to a trustee or creditor in bankruptcy if such

remedy is also available to the creditor under state law. *See In re Allen*, No. 11-37671, 2012 WL

693461, at *12 (Bankr. D.N.J. Mar. 2, 2012) (Burns, J.).  Under New Jersey law, "a constructive

trust is a measure through which a court of equity can prevent unjust enrichment and compel a

restoration of property to a plaintiff that 'in good conscience does not belong to the defendant.' "

*Id.* at *13 (quoting *Flanigan*, 175 N.J. at 608; *see also The Dime Savings Bank of N.Y. v.*

*Rietheimer*, 2009 N.J. Super. Unpub. LEXIS 211, 2009 WL 17871, at *7 (App. Div. Jan. 2,

2009)).  New Jersey courts apply a two-part test when determining whether a constructive trust is

an appropriate remedy, requiring proof of (1) a wrongful act, which (2) resulted in an unjust

enrichment. *Flanigan*, 175 N.J. at 608 (citing *D'Ippolito v. Castoro*, 51 N.J. 584, 589, 242 A.2d

617 (1968)).  The Supreme Court of New Jersey has "caution[ed] courts generally that a

constructive trust is a powerful tool to be used only when the equities in a given case clearly

warrant it." *Flanigan*, 175 N.J. at 611.  Thus, the suitability of imposing a constructive trust must

be established by the movant by "clear, definite, unequivocal and satisfactory evidence." *Gray v. Bradley*, 1 N.J. 102, 104, 62 A.2d 139 (1948).

## ANALYSIS

### A. Applicable Standard

Defendant has framed her Motion as a Motion to Dismiss, or in the alternative, for Summary Judgment. The Motion seeks to bar the Trustee's claims under statute of limitations and *res judicata* affirmative defenses. Because these defenses are based upon allegations contained in the Complaint, documents integral to the Complaint, and matters of public record such as the 1993 and 2002 Deeds and the case record from Debtor's Previous Bankruptcy Case, it is appropriate for this Court to decide the Motion under a motion to dismiss standard. *Rycoline Prod's*, 109 F.3d at 886. By contrast, this Court will not apply a summary judgment standard because other issues going to fraudulent intent would require discovery and so are not ripe for summary judgment. *See Riehl v. Travelers Inc. Co.*, 772 F.2d 19, 24 (3d Cir. 1985).

### B. Defendant's Statute of Limitations Defense

As previously noted, N.J.S.A. 25:2–31(a) provides that any claim to avoid a transfer with actual intent to hinder, delay, or defraud any creditor of the debtor must be brought "within four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was discovered by the claimant." N.J.S.A. 25:2–31(a); *In re G-I Holdings, Inc.*, 313 B.R. at 636. In this case, Debtor transferred his interest in the Cresskill Property to the Defendant by deed dated November 1, 1993. The Debtor filed the instant bankruptcy petition on January 28, 2016, more than twenty years after the date of the transfer. Therefore, the Trustee's claim is time-barred unless the one-year tolling provision applies. This

Court agrees with the Trustee that <u>actual</u> notice, rather than constructive notice, is the appropriate

test for applying the one-year tolling provision under N.J.S.A. 25:2–31(a) as amended. *See*

*Guido*, 2010 WL 1928985, at \*2-3. Accordingly, the fact that Defendant recorded the 1993

Deed does not necessarily establish the requisite actual notice to trigger the running of the one

year period. It is reasonable to conclude that the Wolff Trustee did not become aware of this

transfer until the earlier, the date of his appointment as trustee on January 29, 2016.

However, it is also well-established that in order to bring a fraudulent transfer claim

pursuant to Section 544(b), the Trustee must first identify a creditor that could have brought that

cause of action under the applicable state or federal law at the time the bankruptcy petition was

filed. *In re G-I Holdings Inc.*, 313 B.R. at 632; *In re Bernstein*, 259 B.R. at 560; *In re Dwek*,

2011 WL 1300188, at \*2; *NJ Affordable Homes*, 2013 WL 6048836 at \*33.

Here, the Trustee has not identified a qualifying unsecured creditor in the Complaint.

The Trustee argues that he need not identify a creditor because the tolling provision runs from

the date of his appointment pursuant to N.J.S.A. 25:2–31. Thus, Trustee contends that he has

one year from the date of his appointment to assert a timely fraudulent transfer claim. This Court

disagrees. Trustee's argument rests on the mistaken premise that he himself is a creditor as of

the date of the filing. The Trustee, however, is not a creditor under the NJ UFTA.[7] The Trustee

is a mere representative of creditors who have pre-petition claims against the debtor. *See* 11

U.S.C. § 323. "[T]he power to avoid fraudulent transfers is not a personal asset of the Trustee."

*In re Blatstein*, 260 B.R. 698, 712 (E.D. Pa. 2001) (citing *Official Committee of Unsecured

Creditors v. Chiney et al. (In re Cybergenics Corp.)*, 226 F.3d 237, 244 (3d Cir. 2000)). The

---

[7] The UFTA defines "creditor" as "a person who has a claim." N.J.S.A. 25:2–21. A "claim" is defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." *Id.*

Trustee therefore does not have standing to assert a claim under the NJ UFTA on his own behalf, but instead must rely upon the claims of unsecured creditors. In *G-I Holdings* and *NJ Affordable Homes*, both cases decided after the NJ UFTA was amended, the courts recognized that a trustee's right to bring a fraudulent transfer claim is derivative of the unsecured creditors. *In re NJ Affordable Homes Corp.*, 2013 WL 6048836, at *32; *In re G-I Holdings, Inc.*, 313 B.R. at 633. Failure to identify a qualifying creditor that could have brought a timely claim as of the petition date precludes the trustee's ability to bring a claim premised on state law. *See In re Bernstein*, 259 B.R. at 559.

As an alternative, the Trustee has requested the opportunity to amend the Complaint to identify a qualifying unsecured creditor. The Third Circuit has held that if a claim is vulnerable to dismissal under Rule 12(b)(6), "leave to amend generally must be granted unless the amendment would not cure the deficiency." *Shane,* 213 F.3d 113 at 115; *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962). Here, in his Opposition Brief and at Oral Argument, Trustee Wolff identified the Proof of Claim filed by Raymond B. Cohen, an unsecured creditor asserting a claim for unpaid professional accounting fees from the period of 2006 through 2007. While the Defendant argued here that the Cohen claim is subject to state statute of limitations defenses and as well took issue with the IRS being a qualifying creditor, it remains plausible that a qualifying unsecured creditor exists that could have filed a timely NJ UFTA claim. Thus, the Trustee shall be given the opportunity to amend his complaint to identify a qualifying unsecured creditor pursuant to Section 544(b) and the NJ UFTA.

## C) Defendant's *Res Judicata* Defense

Assuming that the Trustee is capable of identifying a qualifying unsecured creditor, this Court will now turn to Defendant's argument that the February 1, 1999 Settlement Order entered

by this Court in the Previous Case bars the Trustee's claims under the doctrine of *res judicata*.

As stated by the Third Circuit, *res judicata* has three elements: "(1) a final judgment on the

merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit

based on the same cause of action." *Bd. of Trustees of Trucking Emps. of N. Jersey Welfare*

*Fund, Inc. Pension Fund v. Centra*, 983 F.2d 495, 504 (3d Cir. 1992).

### i. *Final Judgment on the Merits*

Although trustee does not dispute that the February 1, 1999 Settlement Order is a final

judgment, he contends that it is not a judgment on the merits because the claim was settled and

not actually litigated. This argument is unpersuasive. Courts have consistently held that an

order based upon a settlement agreement constitutes a binding order for *res judicata* purposes.

*See Weber v. Henderson*, 33 Fed. App'x. 610, 611–13 (3d Cir. 2002) ("For purposes of res

judicata, final judgment on the merits occurred when the District Court approved settlement and

dismissed the case..."); *Rein v. Providian Fin. Corp.*, 270 F.3d 895, 903 (9th Cir. 2001) ("A

judicially approved settlement agreement is considered a final judgment on the merits." (citations

omitted); *In re Am. Metrocomm Corp.*, 303 B.R. 32, 34 (Bankr. D. Del. 2003) (On trust

administrator's motion for summary judgment, the bankruptcy court held prior settlement

agreement was res judicata as to proof of claim); *Cho v. Seventh Ave. Fine Foods Corp.*, 2016

U.S. Dist. LEXIS 56603, *9 (S.D.N.Y. Apr. 28, 2016) (Bankruptcy Court's order approving the

Trustee's settlement constitutes a final judgment on the merits, and there is no question regarding

the Bankruptcy Court's jurisdiction).

Here, the Previous Trustee and all of the creditors in the Previous Case had an

opportunity to object to the proposed settlement. This Court conducted a hearing and approved

the settlement as fair and reasonable under applicable law, at which time the Settlement Order

became appealable as a final order. Consequently, the February 1, 1999 Settlement Order

satisfies the first *res judicata* element as a final judgment on the merits in a prior suit.

ii.  *Same Causes of Action*

The third element cannot be in substantial dispute. Mr. Russo's Complaint in the

Previous Case and the Trustee's Complaint in this Case allege the same causes of action under

Section 544(b) and the NJ UFTA for actual fraud. Moreover, it is undisputed for purposes here

that the 1993 transfer of the Debtor's interest in the Cresskill Property forms the basis for both

claims. Accordingly, Defendant satisfies the third element of a subsequent suit based on the

same cause of action.

iii.  *Privity*

The primary dispute among the parties concerns the privity element. Defendant asserts

that the privity element is satisfied because the Current Trustee and the Debtor share privity, or,

in the alternative, the Previous Trustee and the Current Trustee are in privity. "A privy is one

who is so identified in interest with another that he represents the same legal right." *In re Silver

Mill Frozen Foods, Inc.*, 32 B.R. at 785 (citing *U.S. v. Cal. Bridge & Constr. Co.*, 245 U.S. 337,

38 S. Ct. 91, 62 L. Ed. 332 (1917)). Substance rather than form governs the parties' identities in

a particular case. *In re Good Time Charley's Inc.*, 54 B.R. 157, 160 (Bankr. D.N.J. 1984) (citing

*L.M. Ericsson Telecommunications, Inc. v. Teltronics Services, Inc. (In re Teltronics Services

Inc.)*, 18 B.R. 705, 706 (E.D.N.Y. 1982)).

The Third Circuit has explained:

> [E]ven though a trustee in bankruptcy has a substantive legal relationship with the
> pre-bankruptcy debtor, the "[t]rustee is not simply the successor in interest to the
> Debtor: he represents the interests of all creditors of the Debtor's bankruptcy
> estate." *In re WorldCom*, 401 B.R. at 646 (internal quotation marks omitted).
> Because the trustee also represents the general creditors' interests, the legal
> relationship between the trustee and the pre-bankruptcy debtor is incomplete,

particularly when the interests of the creditors diverge from those of the debtor. *In re Silver Mill,* 32 B.R. at 785.

*In re Montgomery Ward, LLC,* 634 F.3d at 738.

The Third Circuit's decision in *Montgomery Ward,* like this Case, involved two bankruptcy filings by the same debtor. In the first case, the debtor-in-possession, which operated retail merchandising organizations in the United States, confirmed a Chapter 11 plan of reorganization and assumed a certain lease and sublease agreement. (Ward I) *Id.* at 734-35. Thereafter, the debtor filed a second Chapter 11 petition approximately 18 months after emerging from the first bankruptcy, this time with the goal of winding down operations and liquidating its assets. (Ward II) *Id.* at 735. As part of the plan in the second case, the debtor-in-possession rejected the same lease and sublease agreement from the first case, and the assignee of the lease and sublease filed proofs of claim including a claim for lease rejection damages in connection with debtor's breach. *Id.* The Plan Administrator, as a successor to the Ward II estate, objected to the proofs of claim. *Id.* The creditor's response was that the confirmation of the plan in Ward I precluded the Plan Administrator from challenging the nature of the lease and sublease agreement on principles of *res judicata,* equitable estoppel, and waiver. *Id.* at 736. The bankruptcy court granted summary judgment in favor of the Plan Administrator on the *res judicata* issue concluding that confirmation of the Ward I Plan barred the Plan Administrator from challenging the nature of the lease and sublease agreement, that the confirmation order was a final order on the merits, and that the Ward I debtor could have challenged the nature of the lease and sublease in the Ward I case, and that the Ward II debtor (and Plan Administrator) were successors in interest to the Ward I debtor. *Id.* The District Court affirmed. However, the Third Circuit reversed on appeal, finding that the Ward II debtor, as trustee of the new estate, was not

the same party as the Ward I debtor.  It was the successor in interest to the Reorganized

Montgomery Ward and the Ward I debtor. *Id.* at 737.  The Third Circuit noted:

> *Res judicata* may apply to a successor in interest, despite the general rule against
> nonparty preclusion. *Taylor v. Sturgell,* 553 U.S. 880, 892, 128 S.Ct. 2161, 171
> L.Ed.2d 155 (2008). The Court stated in *Taylor* that nonparty claim preclusion
> applies if the nonparty had a substantive legal relationship with a party, and a
> successor in interest has such a relationship with its predecessor. *Id.* A trustee in
> bankruptcy, including a debtor-in-possession, may thus be considered the privy of
> the prebankruptcy debtor for *res judicata* purposes. *In re WorldCom, Inc.,* 401
> B.R. 637, 651 (Bankr.S.D.N.Y.2009) ("a trustee is a successor to the property
> interests of the debtor, thereby placing them in privity"); *Edleman v. McMullin
> Orchards (In re Silver Mill Frozen Foods, Inc.),* 32 B.R. 783, 785
> (Bankr.W.D.Mich.1983) ("The trustee in bankruptcy is a successor to the
> bankrupt's property and for many purposes is deemed in privity with the
> bankrupt.").

*Id.* at 737-38 (footnotes omitted).

The Third Circuit emphasized that that plan administrator's challenge to the lease and

sublease was for the benefit of the Ward II estate and its general unsecured creditors, whereas the

Ward I debtor in the previous case did not have a similar incentive to challenge the lease as it

wanted Montgomery Ward to continue operating the department store. *Id.* at 738.  The court held

that "[t]hese misaligned incentives" indicate that when the Plan Administrator raised this

challenge to the lease and sublease agreement he did not have a substantive legal relationship

with the Ward I debtor of the kind contemplated in *Taylor*, and therefore *res judicata* did not

apply. *Id.* at 738-39.

*In re Good Time Charley's Inc.*, 54 B.R. 157 is also instructive.  In that case, the Chapter

7 trustee, Peter W. Rodino, III, filed a fraudulent conveyance action pursuant to Section 544 of

the Bankruptcy Code and the New Jersey Business Corporation Act, N.J.S.A. 14A:14–10[2] and

[3] law to set aside a prepetition mortgage given by the debtor to a third-party. *Id.* at 158.   Prior

to the petition date, a New Jersey state court had entered judgment declaring that the mortgage

was valid. *Id.* The defendant's argument before the bankruptcy court was that the state court order barred the trustee's avoidance claims under principles of *res judicata*, collateral estoppel and the entire controversy doctrine. *Id.* The Court rejected the application of each of these preclusion doctrines. In addressing the issue of privity between the trustee and pre-petition debtor corporation for purposes of issue or claim preclusion the court found:

> Though neither of the parties addressed the question of whether the trustee is a privy to the prepetition corporation for purposes of issue or claim preclusion, the Court has considered it. It is true that "[t]he trustee in bankruptcy is a successor to the bankrupt's property and for many purposes is deemed in privity with the bankrupt." *Edleman v. McMullin Orchards (In the Matter of Silver Mill Frozen Foods, Inc.),* 32 B.R. 783, 785 (Bankr.W.D.Mich.1983). *See also* 1B J. Moore, *Moore's Federal Practice* ¶ 0.419 [3–6] (2d ed. 1983). As stated in *Edleman, supra,* "[i]t is clear however that privity between a trustee and a bankrupt is not complete." *Also see L.M. Ericsson Telecommunications, Inc. v. Teltronics Services, Inc. (In re Teltronics Services, Inc.),* 18 B.R. 705 (E.D.N.Y.1982).
>
> As noted in *Teletronics Services, supra,* at 706, "[s]ubstance rather than form determines the scope of identity of parties."
>
> In this case, the trustee is seeking to protect the rights of creditors who did not have the opportunity to challenge the mortgage in the state court proceeding. The interests of GTC [the debtor] at stake in the state court action were distinct from those of the creditors in this case. The fraudulent conveyance provisions relied on by the trustee would not have been of any help to GTC in the prior proceeding. Thus, it would not be logical to preclude the trustee from litigating the fraudulent conveyance issue because of GTC's failure to raise it in the prior proceeding. In short, the trustee is not a privy to the prepetition debtor for the purposes of this proceeding. Accordingly, neither collateral estoppel, res judicata, nor the single controversy doctrine bars the trustee's action.

*Id.* at 160.

The court, in a decision by Bankruptcy Judge D. Joseph DeVito, reasoned that the interests of the debtor at stake in the state court action were distinct from those of the trustee and creditors in the bankruptcy case. *Id.* at 160. Therefore, the Court held that there was no privity between the trustee and the prepetition debtor corporation. *Id.*

Similarly, this Court does not find that the privity element is satisfied for purposes of *res judicata*. First, as in *Montgomery Ward* and *Good Time Charley's*, this Court finds that the Current Trustee is not in privity with the Debtor. Although a trustee may, under certain circumstances, be bound by the pre-petition acts of the debtor, the legal relationship between the trustee and the pre-petition debtor is incomplete "particularly when the interests of the creditors diverge from those of the debtor." *Montgomery Ward*, 634 F.3d at 738. Here, the Trustee is challenging a transfer of real property from the Debtor to the Defendant, his spouse. The Trustees' interest in asserting this claim for the benefit of creditors is directly opposite to the Debtor's interest in shielding the property from his creditors. These "misaligned incentives" defeat the Defendant's argument that the Current Trustee and Debtor are in privity for purposes of *res judicata*. *Id.* at 738.

Second, this Court finds that the Previous Trustee and the Current Trustee are not in privity because they represent an entirely different body of creditors. It is axiomatic that the Trustee represents the interests of creditors of a bankruptcy estate. *See In re Martin*, 91 F.3d 389, 394 (3d Cir. 1996) (finding that the trustee has a fiduciary relationship with all creditors of the estate). The Trustee is a fiduciary to these creditors and acts in their stead to collect and liquidate the property of the estate. *Id.* (citing 11 U.S.C. § 704(1)). To that end, the Previous Trustee represented the creditors that existed in 1997. The Current Trustee represents a different set of creditors whose claims arose after the discharge was entered in the 1997 bankruptcy case. These creditors did not have an opportunity to object to the September 1, 1999 Settlement or an opportunity to litigate the Previous Fraudulent Transfer Case. Therefore, they cannot be bound by the 1999 Settlement Order. Likewise, the Current Trustee, who represents those creditors' interests, is not in privity with the Previous Trustee for purposes of *res judicata*.

Because Defendant cannot establish all three elements, Defendant's *res judicata* defense fails.

### D.  Constructive Trust

Defendant by this Motion has raised *res judicata* and the statute of limitations defenses to prevent the Trustee from relying upon the 1993 Deed Transfer to support his claims.  By this Opinion, this Court has rejected these defenses in the context of the Motion to Dismiss, and finds that the fraudulent transfer claim may proceed on the condition that the Trustee amends the Complaint to identify a qualifying unsecured creditor pursuant to Section 544(b) and the NJ UFTA.

This Court also finds that the Trustee's constructive trust claim should proceed.  As noted above, a constructive trust is a remedy available to a trustee in bankruptcy, if available under state law. *In re Allen,* 2012 WL 693461, at *2.  As well, under New Jersey law a constructive trust is a measure through which a court of equity can prevent unjust enrichment. *Id.* at *13. Here the Court is satisfied that the Trustee has set forth a plausible claim for such equitable remedy to at least allow discovery to proceed on this claim.  Given the decision today to allow the litigation to proceed, the Defendant's request to compel the Plaintiff Trustee to discharge the *Notice of Lis Pendens* is also denied at this time.

### CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss the Complaint or alternatively for Summary Judgment and to compel Plaintiff to Discharge the *Notice of Lis Pendens* is DENIED without prejudice.  The Trustee shall have 21 days from the date of the Opinion to amend the Complaint in conformance with this Opinion.

An Order shall be submitted in accordance with this Opinion.

ROSEMARY GAMBARDELLA
UNITED STATES BANKRUPTCY JUDGE

DATED:  August 28, 2017